## TARBUTTON v. AMBRIZ. (No. 7089.)*

(Court of Civil Appeals of Texas. San Antonio. Feb. 6, 1924. Rehearing Denied March 5, 1924.)

1. **Municipal corporations ⬿706(5)—Evidence held not to show injury to pedestrian by automobile as claimed.**

Evidence *held* not to sustain verdict for pedestrian's injury in action against automobile driver on theory that pedestrian was struck by the automobile while on the sidewalk.

2. **Trial ⬿352(4)—Issue of negligent speed held improperly submitted to jury in action for injury from automobile.**

In a pedestrian's action for personal injury from being run down while on the sidewalk by an automobile, it was error to ask the jury if the automobile was operated at a negligent speed, where there was no evidence to support such issue.

3. **Trial ⬿108½—Asking jurors as to interest in liability insurance companies held error.**

In personal injury action, it was error to ask jurors if they or any member of their families were employed by or had any interest in any liability or casualty insurance company.

Appeal from District Court, Bexar County: R. B. Minor, Judge.

Action by Glafira Ambriz against R. C. Tarbutton. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Birkhead & Lang, Werner N. Beckmann, and Mason Williams, all of San Antonio, for appellant.

Edward H. Lange and Arthur G. Uhl, both of San Antonio, for appellee.

FLY, C. J. This is an appeal from a judgment for $3,000 rendered in favor of appellee, in an action in which she sued appellant for damages caused from personal injuries arising from being struck by an automobile on October 3, 1921. The cause was submitted to a jury on special issues.

All the evidence showed that appellee was on her way to her place of business in the early morning of October 3, 1921, when she was struck by a moving automobile driven by appellant on South Frio street, between Monterey and Buena Vista streets, in the city of San Antonio. All the witnesses agree that appellant was driving north on South Frio street, and that appellee was going north on the east sidewalk of South Frio street. She swore that she was on the sidewalk, which was not paved, when she was struck. She swore:

"I felt a strong gust of wind; I felt as though they had taken hold of my clothes and raised me up; then I wondered what was happening, and I turned around and looked south; when I looked back, the glass of the automobile struck me right on the side, twisted me around in front of the motor of the car, I was knocked down, and the car dragged me on a little piece, and the left wheel of the automobile was on top of my right leg."

She said she was away from the curbing and between it and the fence when she was struck. It was a cloudy day, and was drizzling. When cross-examined as to how she was struck appellee testified:.

"Said it raised me up and threw me backwards into the street; when it struck I fell back on my back, on top of the motor, and then just as I saw this I was throwed on top of the motor; that was the first lick I got on top of my head."

She lost her purse, which was found by appellant on the left fender of the car. Appellee testified that she was struck by the car south of a telephone pole which stood in the edge of the sidewalk, inside the curb. If her testimony be true, the front of the car must have been on the sidewalk when it struck her, and her chief witness, Gregoris Islas, swore that when he reached the scene of the accident the car was standing with the right front wheel on the sidewalk, the other wheel and the two rear wheels being in the street, the rear right wheel being near the curbing. That witness sought to convey the impression that the car was south of the telephone pole, but on cross-examination admitted that he did not know whether there were any telephone poles along that block or not. That witness swore that the left rear wheel, that is, the one farthest from the curb, was on the right leg of appellee, and she was stretched on the pavement under the car with her head near the curb just in front of the right rear wheel. The street was paved, but the sidewalk was not, and it was muddy.

Appellant swore that it was about 7 o'clock a. m. and he was returning in his Buick automobile from an ice factory and was moving north on South Frio street, at the rate of 10 or 12 miles an hour, when appellee stepped out into the street about 10 feet ahead of him, and that the left front fender struck her and threw her under the car. As soon as he saw her, to avoid striking her he threw his car to the right and it went over the curb into the sidewalk. He stopped the car in about 12 feet. He swore that when he got out of his car appellee was lying under it with her head back of the rear right wheel and her right leg under the rear left wheel. He swore that the pole was about two feet south of the rear of the car. This becomes important because he testified that appellee seemed to step from behind the pole into the street.

How appellee was placed in the position she held when the automobile stopped and was lifted from her right leg was not shown.

---

There is some difficulty in accounting for her position from the standpoint of either version of the evidence, but the difficulties are intensified from the viewpoint of appellee's testimony. There is no reasonable way of reconcile her posture on the pavement after the accident with the testimony of appellee that she was caught up by the glass of the car, which must have been the windshield or lamp, and thrown over the motor from the right-hand side of the car. It appears to be an impossibility.

It is alleged in the petition that appellant was operating his automobile "in such a negligent and reckless manner that said automobile was caused to leave the traveled street, to mount the curb, and to run upon the sidewalk of the said street," but the evidence totally fails to indicate that the automobile ran along the sidewalk, and the testimony as to the automobile striking the sidewalk renders it utterly impossible for appellee to have been struck, carried over the motor and under a wheel on the opposite side. According to the testimony of Islas, the only track or impression made by the front right wheel on the muddy sidewalk "was not very deep; you could just see the mark; it was a kind of curved mark." There was no testimony tending to show that the car ran along the sidewalk, but merely that it jumped over the 7-inch curbing into the sidewalk. Unless the front right wheel ran along the sidewalk for some distance it could not have struck appellee, as she swore it did, and have thrown her over the motor to the opposite side of the car. If the automobile jumped on the sidewalk and stopped as soon as it reached that point, as all the testimony tends to show it did, it would have knocked appellee down on the sidewalk, and instead of being in the street on the left of the automobile she would necessarily have been on the sidewalk. In other words, if the car struck her on the sidewalk it must have stopped at the very time it struck. The physical facts, however, show that she must have been struck while the car was moving, and that it continued to move until her right leg was run over by the left rear wheel. This is utterly irreconcilable with the theory that appellee was struck while she was on the sidewalk. The physical facts can be reconciled with the testimony of appellant that appellee was struck by the left front fender while she was in the street, and the car ran on the sidewalk after she had been struck.

Appellant swore that his automobile was moving at the rate of 10 or 12 miles an hour, and there was no testimony to show that he was moving at a reckless rate of speed, even if the very uncertain and indefinite testimony of Islas is to be credited. He testified that he lived at 230 South Frio street, near an alley which ran between his place and the block on which appellee was injured.

He said that it was raining, and he was standing in his door, which was about 17 feet from the curb line, and saw appellee going north on Frio street. He saw her pass the alley and get on the sidewalk, and then he went inside. He said that at the time he went in he heard an automobile and saw the car out of the "corner" of his eye. Just as he closed the door he heard some one yelling, but did not pay much attention to it, but after reflection opened the door, looked out, and saw appellee under the car. He said that she was about 44 paces, or 88 feet, from where the automobile passed his house. He did not identify the automobile. Because the automobile had gone 88 feet while Islas was going in and closing the door and hearing the yelling, it is argued that it must have been moving very rapidly. The testimony is too unsatisfactory to prove anything. The physical facts show that the automobile could not have been running at a high rate of speed, for it did not break the curbing, and could not have stopped in a foot and a half after it jumped the curbing.

[1] If appellee was not struck while on the sidewalk, she has failed to make out a case under the allegations. She alleged that appellant "operated said automobile in such a manner as to cause it to leave the traveled roadway to mount upon the curb and to run on and along the said sidewalk on the south side of South Frio street, in the city of San Antonio, Bexar county, Tex., all of which constitutes negligence on the part of the defendant." All of the testimony, instead of proving, as alleged, that appellant ran his automobile on and along the sidewalk, tended to show that the car was not run on and along the sidewalk, and that it was an impossibility for appellee to have been struck in the place and in the manner alleged by her.

[2] The court asked the jury if the automobile was operated at a negligent speed, while there was no evidence to show that the car was being operated "at a negligent rate of speed." If by that very uncertain designation of the speed is meant that he was operating at a reckless or illegal speed, there was no evidence to justify it. Neither was there any evidence that appellant did not have his car under control, nor was there any allegation that he did not sound his horn on approaching appellee. No such allegation would have been pertinent under the theory that appellee was on the sidewalk. No such issue was pertinent or proper, and yet that is one ground of negligence on which the jury found their verdict. There was really but one vital issue in the case, and that was: Did appellant run his automobile upon and along the sidewalk, and negligently strike and injure appellee, and, if so, how much was she damaged.

[3] No valid reason can be given for asking jurors, as was done in this case, if they

or any members of their family were employed by or have any interest in any liability or casualty insurance company. That matter could have no legitimate bearing on the case; for, if a juror should be employed by or have an interest in such company, he would not know that the defendant was insured in that or any other insurance company, and it could not affect his verdict. No good purpose could be intended or subserved by such question, and it might induce a verdict under the view that the insurance company would be compelled to pay it, and the defendant would not be hurt.

Because the evidence did not support the verdict of the jury, because improper questions were asked jurors, and because the cause was improperly submitted to the jury; the judgment is reversed, and the cause remanded.